## Klotz v. Redevelopment Authority of the City of Philadelphia

*H. M. Solomon*, for plaintiff.

*E. L. Snitzer* and *M. C. Sharp*, for defendant.

### Discussion

DOTY, J., July 1, 1963.—In or about January, 1959, plaintiff executed an "Offer of Sale" of her property

located at 7732 Brunswick Avenue, Philadelphia, Pa., for the price of $9,000. This written offer of sale was a form supplied to plaintiff by defendant Redevelopment Authority.

Plaintiff requests this court to set aside her offer and to relieve her of the obligation of selling her property to defendant in accordance with its terms on the ground that she executed the agreement inadvertently and by mistake or, in the alternative, that the offer was never accepted according to its terms and, therefore, there is no contract between the parties.

Plaintiff testified that one of defendant's agents had advised her that he was sending her some "Waiver of Interest" forms for her to sign and that, in reliance on this representation, plaintiff signed the top paper, which was a waiver of interest form, and also signed a paper underneath which was, in fact, an offer of sale form.

We are convinced that when plaintiff signed the offer of sale form she knew, or should have known, what it was. Not only is the appearance of this printed form completely different from the appearance of the waiver of interest form, but the size of the papers are so dissimilar that anyone would know that the two forms are not the same.

However, we are convinced that plaintiff's offer was never validly accepted by defendant. Therefore, there is no contract between the parties. Plaintiff's offer which was on the form prepared by defendant provided "if this offer is accepted, the Authority shall endorse its acceptance hereon, and mail notice thereof to the seller at the address specified below."

It is undisputed that the authority did not endorse its acceptance in the place provided for such acceptance on the offer form, contrary to plaintiff's express provisions. Moreover, although defendant apparently

passed a resolution on February 3, 1959, in which it resolved to accept plaintiff's offer, such acceptance was never communicated to plaintiff. Defendant maintains that both in her complaint and in her testimony plaintiff admitted receipt of such acceptance but a careful examination reveals that this is not so.

In addition, it is significant that, although defendant maintains that it sent a written notice of acceptance to plaintiff on February 10, 1959, it never produced its copy of that notice nor did it offer any explanation for its failure to do so.

It is, of course, well settled in Pennsylvania that an offer and an acceptance are necessary prerequisites to the establishment of a valid, binding and enforceable contract: Hedden v. Lupinsky, 405 Pa. 609 (1962); Cohn v. Penn Beverage Co., 313 Pa. 349 (1934).

Not only must there be an acceptance of the offer but the acceptance must be unconditional and identical with the terms of the offer: Cohn v. Penn Beverage Co., supra.

The express terms of the offer imposed two conditions upon the offeree, namely, that its acceptance should be endorsed on the form and notice of the acceptance should be mailed to plaintiff. Defendant failed to comply with both of these conditions and, therefore, it never validly accepted plaintiff's offer. Consequently, a valid contract was never formed.

The offer provided that it should be irrevocable for a period of 90 days from date and remain in force until terminated by the seller, which termination would be effective at any time after the expiration of the 90-day period by the seller giving 60 days written notice.

On March 4, 1959, plaintiff sent to defendant an affidavit which she had executed and which stated that she signed the offer by mistake and that she did not intend to execute an offer to sell her land for $9,000.

Although we think plaintiff's offer was valid, it is clear that her affidavit of March 4, 1959, was notice to defendant of her revocation of her offer.

There is no allegation that defendant attempted to accept plaintiff's offer at any time between March 4, 1958, and October 16, 1959, which latter date has significance because on that date defendant sent plaintiff a letter in which it offered to purchase her property for the sum of $10,000. Therefore, it is apparent that as of October 16, 1959, defendant realized and acknowledged that it did not have a contract with plaintiff to purchase her property for $9,000. It is also significant that although plaintiff's offer provided that "The Authority shall specify the place and time of closing, which shall not be more than 60 days after the date of acceptance," defendant never attempted to schedule a closing within the 60 days of February, 1959, the date it alleges it accepted plaintiff's offer. Therefore, even assuming that the offer had been validly accepted, the agreement would not be binding on plaintiff because defendant failed to comply with the terms of the offer, namely, those that provided that settlement must be scheduled within 60 days of the acceptance.

In a letter to plaintiff, dated February 19, 1960, defendant stated:

"On February 10, 1959, we advised you that your option in the amount of $9,000.00 had been approved by the Board of this Authority on February 6, 1959."

This letter, is, of course, no proof of the fact stated therein, namely, that an acceptance of plaintiff's offer was communicated to her on February 10, 1959. By offering into evidence this letter of February 10, 1959, defendant is, in fact, attempting to pull itself up by its own boot-straps. That is, defendant is attempting to offer secondary evidence of its alleged acceptance of February 10, 1959.

As we stated previously, the best evidence of an acceptance would have been a letter of acceptance, either the original, which naturally would be in plaintiff's possession, or a copy which would be in defendant's possession. However, defendant offered neither, nor did it offer any explanation for its failure to do so. In fact, there was no testimony offered by defendant concerning an acceptance. Plaintiff's testimony, on the other hand, was not too clear, but she did deny receiving an acceptance, and it must be borne in mind that this lady had no familiarity with legal procedures and obviously never understood that an offer of sale had been accepted and completed.

Thus, it is clear that the parties never entered into a valid and binding contract for the sale of plaintiff's property. On the contrary, it appears that negotiations concerning the price continued. Defendant stated its willingness on October 16, 1959, approximately eight months after the contention regarding the acceptance, to still negotiate with plaintiff and offered in writing to pay the sum of $10,000 for the property. Surely, if defendant considered that it had a valid and binding contract there was no necessity for its latter offer of $10,000, which was more than the price in the original offer.

Of course, relieving plaintiff of its obligations does not place plaintiff in an unconscionable position, nor does it prejudice defendant in any way. Defendant, on December 8, 1958, validly condemned this property, and will ultimately gain title to it. However, it has an obligation to deal fairly with plaintiff and to pay her the fair market value of this property. This value will be determined in accordance with the law by the proper forum having jurisdiction in such matters, and no detriment will result to defendant nor will any undue benefit enure to plaintiff as a result of such proceedings.

One of the purposes of defendant corporation is to pay a fair price for a property it condemns, and this purpose will ultimately be carried out in this case. We believe that the interests of justice will best be served by having a fair value determined as set forth above. . . .

And now, to wit, July 1, 1963, it is ordered, adjudged and decreed:

1. There is no valid, binding and enforceable contract between the parties in this action.

2. Both parties are at liberty to proceed for the sale of plaintiff's property and the purchase by defendant either through negotiations or legal proceedings to determine the fair market value of plaintiff's property.

3. The costs of these proceedings shall be paid by the defendant.